MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ARMANDO CASTRO, INOCENTE JOJ,
LUIS LOPEZ, JOSE LUIS GORDILLO
JIMENEZ, MIGUEL ALEX QUIEJ LOPEZ,
OLIVIO REYES, OSCAR GUTIERREZ, and
RAFAEL PASCUAL CHACAJ BATZ,
*individually and on behalf of others similarly*
*situated,*

                                        *Plaintiffs*,

           -against-

BLACK ROSE HOSPITALITY LLC (D/B/A
THE GREENWICH SOCIAL), JAMES
RICHARDS, DAVID RICHER, RUSSELL
YAM, and ERIC HERNANDEZ,

                            *Defendants.*
--------------------------------------------------------X

**COMPLAINT**


**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

      Plaintiffs Armando Castro, Inocente Joj, Luis Lopez, Jose Luis Gordillo Jimenez, Miguel

Alex Quiej Lopez, Olivio Reyes, Oscar Gutierrez, and Rafael Pascual Chacaj Batz , individually

and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their

attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against

Black Rose Hospitality LLC (d/b/a The Greenwich Social), ("Defendant Corporation"), James

Richards, David Richer,  Russell Yam, and  Eric Hernandez, ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Black Rose Hospitality LLC (d/b/a The Greenwich Social), James Richards, David Richer, Russell Yam, and Eric Hernandez.

2.       Defendants own, operate, or control a food court, located at 74 5th Ave, New York, NY 10011 under the name "The Greenwich Social".

3.      Upon information and belief, individual Defendants James Richards, David Richer, Russell Yam, and Eric Hernandez, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the food court as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers at the food court located at 74 5th Ave, New York, NY 10011.

5.      Plaintiff Chacaj and Plaintiff Quiej were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to taking out the trash, sweeping, mopping, cleaning, and moving inventory (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiff Chacaj and Plaintiff Quiej as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     At all relevant times, Defendants paid Plaintiff Chacaj and Plaintiff Quiej at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Chacaj's and Plaintiff Quiej's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs Chacaj and Quiej's actual duties in payroll records by designating them as delivery workers instead of non-tipped employees.

14.     This allowed Defendants to avoid paying Plaintiffs Chacaj and Quiej at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

15.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

16.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

17.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

18.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

19.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

21.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a food court located in this district.

22.     Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

23.     Plaintiff Armando Castro ("Plaintiff Castro" or "Mr. Castro") is an adult individual residing in Kings County, New York.

24.     Plaintiff Castro was employed by Defendants at The Greenwich Social from approximately January 2021 until on or about May 17, 2021.

25.     Plaintiff Inocente Joj ("Plaintiff Joj" or "Mr. Joj") is an adult individual residing in Queens County, New York.

26.     Plaintiff Joj was employed by Defendants at The Greenwich Social from approximately October 2020 until on or about May 18, 2021.

27.     Plaintiff Luis Lopez ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in Queens County, New York.

28.     Plaintiff Lopez was employed by Defendants at The Greenwich Social from approximately January 2021 until on or about May 11, 2021.

29.     Plaintiff Jose Luis Gordillo Jimenez ("Plaintiff Gordillo" or "Mr. Gordillo") is an adult individual residing in Queens County, New York.

30.     Plaintiff Gordillo was employed by Defendants at The Greenwich Social from approximately September 2020 until on or about May 9, 2021.

31.     Plaintiff Miguel Alex Quiej Lopez ("Plaintiff Quiej" or "Mr. Quiej") is an adult individual residing in Queens County, New York.

32.     Plaintiff Quiej was employed by Defendants at The Greenwich Social from approximately October 2020 until on or about May 2021.

33.     Plaintiff Olivio Reyes ("Plaintiff Reyes" or "Mr. Reyes") is an adult individual residing in New York County, New York.

34.     Plaintiff Reyes was employed by Defendants at The Greenwich Social from approximately September 2020 until on or about May 18, 2021.

35.     Plaintiff Oscar Gutierrez ("Plaintiff Gutierrez" or "Mr. Gutierrez") is an adult individual residing in Queens County, New York.

36.     Plaintiff Gutierrez was employed by Defendants at The Greenwich Social from approximately May 2020 until on or about May 1, 2021.

37.     Plaintiff Rafael Pascual Chacaj Batz ("Plaintiff Chacaj" or "Mr. Chacaj") is an adult individual residing in Bronx County, New York.

38.     Plaintiff Chacaj was employed by Defendants at The Greenwich Social from approximately November 2020 until on or about May 18, 2021.

*Defendants*

39.     At all relevant times, Defendants owned, operated, or controlled a food court, located at 74 5th Ave, New York, NY 10011 under the name "The Greenwich Social".

40.     Upon information and belief, Black Rose Hospitality LLC (d/b/a The Greenwich Social) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 74 5th Ave, New York, NY 10011.

41.     Defendant James Richards is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant James Richards is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant James Richards possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

42.     Defendant David Richer is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant David Richer is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant David Richer possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

43.     Defendant Russell Yam is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Russell Yam is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Russell Yam possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

44.     Defendant Eric Hernandez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Eric Hernandez is sued individually in his capacity as a manager of Defendant Corporation. Defendant Eric Hernandez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

45.    Defendants operate a food court located in the Greenwich Village section of Manhattan in New York City.

46.    Individual Defendants, James Richards, David Richer, Russell Yam, and Eric Hernandez, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

47.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

48.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

49.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

50.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

51.    Upon information and belief, Individual Defendants James Richards, David Richer, and Russell Yam operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

　　　　a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

52.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

53.     In each year from 2020 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

54.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the food court on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

55.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, Plaintiffs Chacaj and Quiej spent over 20% of each shift performing the non-tipped duties described above.

56.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Armando Castro*

57.     Plaintiff Castro was employed by Defendants from approximately January 2021 until on or about May 17, 2021.

58.     Defendants employed Plaintiff Castro as a delivery worker.

59.     Plaintiff Castro regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

60.     Plaintiff Castro's work duties required neither discretion nor independent judgment.

61.     From approximately January 2021 until on or about February 15, 2021, Plaintiff Castro worked from approximately 9:00 a.m. until on or about 5:00 p.m., 5 days a week (typically 40 hours per week).

62.     From approximately February 16, 2021 until on or about April 30, 2021, Plaintiff Castro worked from approximately 9:00 a.m. until on or about 5:00 p.m., 3 days a week (typically 24 hours per week).

63.     From approximately May 1, 2021 until on or about May 17, 2021, Plaintiff Castro worked from approximately 9:00 a.m. until on or about 5:00 p.m., 5 days a week (typically 40 hours per week).

64.     Throughout his employment, Defendants paid Plaintiff Castro his wages by check.

65.     From approximately January 2021 until on or about May 17, 2021, Defendants paid Plaintiff Castro $6.00 for each delivery he made which would come out to approximately $520 per week.

66.     Plaintiff Castro's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

67.     For example, Defendants required Plaintiff Castro to work an additional 10 hours past his scheduled departure time once a month, and did not pay him for the additional time he worked.

68.     Defendants withheld all of the tips customers wrote in for Plaintiff Castro.

69.     Defendants required Plaintiff Castro to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

70.     At the beginning of his employment, Defendants required Plaintiff Castro to sign a number of documents, the contents of which he was not allowed to review in detail.

71.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Castro regarding overtime and wages under the FLSA and NYLL.

72.     Defendants did not provide Plaintiff Castro an accurate statement of wages, as required by NYLL 195(3).

73.     Defendants did not give any notice to Plaintiff Castro, in English and in Spanish (Plaintiff Castro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

74.     Defendants required Plaintiff Castro to purchase "tools of the trade" with his own funds—including an electric bicycle and bicycle maintenance.

*Plaintiff Inocente Joj*

75.     Plaintiff Joj was employed by Defendants from approximately October 2020 until on or about May 18, 2021.

76.     Defendants employed Plaintiff Joj as a delivery worker.

77.     Plaintiff Joj regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

78.     Plaintiff Joj's work duties required neither discretion nor independent judgment.

79.     Throughout his employment with Defendants, Plaintiff Joj regularly worked in excess of 40 hours per week.

80.     From approximately October 2020 until on or about May 18, 2021, Plaintiff Joj worked from approximately 10:00 a.m. until on or about 5:00 p.m., Fridays through Wednesdays (typically 42 hours per week).

In addition, once a month, Plaintiff Joj worked from approximately 10:00 a.m. until on or about 5:00 p.m., five days a week and from approximately 10:00 a.m. until on or about 10:00 p.m., one day a week (typically 47 hours per week).

81.     Throughout his employment, Defendants paid Plaintiff Joj his wages by direct deposit.

82.     From approximately October 2020 until on or about May 18, 2021, Defendants paid Plaintiff Joj $7 for each delivery he made which would come out to approximately $735 per week.

83.     Plaintiff Joj's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

84.     For example, Defendants required Plaintiff Joj to work 5 hours past his scheduled departure time once a month, and did not pay him for the additional time he worked.

85.     Defendants never granted Plaintiff Joj any breaks or meal periods of any kind.

86.     Defendants withheld all of the tips customers wrote in for Plaintiff Joj.

87.     Although Plaintiff Joj was required to keep track of his time, Defendant's time tracking system would produce much fewer hours than those he worked each week; in addition, Defendants required him to punch out at his scheduled departure time and continue working five additional hours once a month.

88.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Joj regarding overtime and wages under the FLSA and NYLL.

89.     Defendants did not provide Plaintiff Joj an accurate statement of wages, as required by NYLL 195(3).

90.     Defendants did not give any notice to Plaintiff Joj, in English and in Spanish (Plaintiff Joj's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

91.     Defendants required Plaintiff Joj to purchase "tools of the trade" with his own funds—including an electric bicycle, a helmet, a vest, and bicycle maintenance.

*Plaintiff Luis Lopez*

92.     Plaintiff Lopez was employed by Defendants from approximately January 2021 until on or about May 11, 2021.

93.     Defendants employed Plaintiff Lopez as a delivery worker.

94.     Plaintiff Lopez regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

95.     Plaintiff Lopez's work duties required neither discretion nor independent judgment.

96.     Throughout his employment with Defendants, Plaintiff Lopez regularly worked in excess of 40 hours per week.

97.     From approximately January 2021 until on or about March 2021, Plaintiff Lopez worked from approximately 9:00 a.m. until on or about 5:30 p.m., 6 days a week (typically 51 hours per week).

98.     From approximately April 2021 until on or about May 11, 2021, Plaintiff Lopez worked from approximately 9:30 a.m. until on or about 5:30 p.m., 6 days a week (typically 48 hours per week).

99.     Throughout his employment, Defendants paid Plaintiff Lopez his wages by direct deposit.

100.    From approximately January 2021 until on or about May 11, 2021, Defendants paid Plaintiff Lopez $6.50 for each delivery he made which came out to approximately $780 per week.

101.    Plaintiff Lopez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

102.    For example, Defendants required Plaintiff Lopez to work an additional 30 minutes past his scheduled departure time 3 times a week, and did not pay him for the additional time he worked.

103.    Defendants never granted Plaintiff Lopez any breaks or meal periods of any kind.

104.    Throughout his employment, Defendants withheld all of Plaintiff Lopez's tips.

105.    Plaintiff Lopez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

106.    On a number of occasions, Defendants required Plaintiff Lopez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

107.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lopez regarding overtime and wages under the FLSA and NYLL.

108.    Defendants did not provide Plaintiff Lopez an accurate statement of wages, as required by NYLL 195(3).

109.    Defendants did not give any notice to Plaintiff Lopez, in English and in Spanish (Plaintiff Lopez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

110.    Defendants required Plaintiff Lopez to purchase "tools of the trade" with his own funds—including wheels, breaks, and a bag.

*Plaintiff Jose Luis Gordillo Jimenez*

111.    Plaintiff Gordillo was employed by Defendants from approximately September 2020 until on or about May 9, 2021.

112.    Defendants employed Plaintiff Gordillo as a delivery worker.

113.    Plaintiff Gordillo regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

114.    Plaintiff Gordillo's work duties required neither discretion nor independent judgment.

115.    Throughout his employment with Defendants, Plaintiff Gordillo regularly worked in excess of 40 hours per week.

116.    From approximately September 2020 until on or about May 9, 2021, Plaintiff Gordillo worked from approximately 9:00 a.m. until on or about 5:30 p.m., 6 days a week (typically 51 hours per week).

117.    Throughout his employment, Defendants paid Plaintiff Gordillo his wages by direct deposit.

118.    From approximately September 2020 until on or about May 9, 2021, Defendants paid Plaintiff Gordillo $7.00 for each delivery he made which would come out to approximately $500 per week.

119.    Defendants never granted Plaintiff Gordillo any breaks or meal periods of any kind.

120.    Throughout his employment, Defendants withheld all of Plaintiff Gordillo's tips.

121.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gordillo regarding overtime and wages under the FLSA and NYLL.

122.    Defendants did not provide Plaintiff Gordillo an accurate statement of wages, as required by NYLL 195(3).

123.    Defendants did not give any notice to Plaintiff Gordillo, in English and in Spanish (Plaintiff Gordillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

124.    Defendants required Plaintiff Gordillo to purchase "tools of the trade" with his own funds—including bicycle equipment.

*Plaintiff Miguel Alex Quiej Lopez*

125.    Plaintiff Quiej was employed by Defendants from approximately October 2020 until on or about May 2021.

126.    Defendants ostensibly employed Plaintiff Quiej as a delivery worker.

127.    However, Plaintiff Quiej as also required to spend a significant portion of his work day performing the non-tipped duties described above.

128.   Although Plaintiff Quiej ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

129.   Plaintiff Quiej regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

130.   Plaintiff Quiej's work duties required neither discretion nor independent judgment.

131.   Throughout his employment with Defendants, Plaintiff Quiej regularly worked in excess of 40 hours per week.

132.   From approximately October 2020 until on or about March 2020, Plaintiff Quiej worked from approximately 9:00 a.m. until on or about 5:30 p.m. five days a week and from approximately 9:00 a.m. until on or about 9:00 p.m., one day a week (Saturdays through Thursdays) (typically 51 to 54.5 hours per week).

133.   From approximately April 2021 until on or about May 18, 2021, Plaintiff Quiej worked from approximately 10:00 a.m. until on or about 5:30 p.m. five days a week and from approximately 10:00 a.m. until on or about 9:00 p.m., one day a week (Saturdays through Thursdays) (typically 45 to 48.5 hours per week).

134.   Throughout his employment, Defendants paid Plaintiff Quiej his wages by direct deposit.

135.   From approximately October 2020 until on or about May 18, 2021, Defendants paid Plaintiff Quiej $7.00 for each delivery he made which would come out to approximately $840 per week.

136.   Plaintiff Quiej's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

137.     For example, Defendants required Plaintiff Quiej to work an additional 3 and a half hours past his scheduled departure time once a week, and did not pay him for the additional time he worked.

138.     Defendants never granted Plaintiff Quiej any breaks or meal periods of any kind.

139.     Throughout his employment, Defendants withheld all of Plaintiff Quiej's tips.

140.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Quiej regarding overtime and wages under the FLSA and NYLL.

141.     Defendants did not provide Plaintiff Quiej an accurate statement of wages, as required by NYLL 195(3).

142.     Defendants did not give any notice to Plaintiff Quiej, in English and in Spanish (Plaintiff Quiej's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

143.     Defendants required Plaintiff Quiej to purchase "tools of the trade" with his own funds—including a bicycle.

*Plaintiff Olivio Reyes*

144.     Plaintiff Reyes was employed by Defendants from approximately September 2020 until on or about May 18, 2021.

145.     Defendants employed Plaintiff Reyes as a delivery worker.

146.     Plaintiff Reyes regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

147.     Plaintiff Reyes's work duties required neither discretion nor independent judgment.

148.     Throughout his employment with Defendants, Plaintiff Reyes regularly worked in excess of 40 hours per week.

- 18 -

149.    From approximately September 2020 until on or about May 18, 2021, Plaintiff Reyes worked from approximately 10:00 a.m. until on or about 5:30 p.m., 5 days, three weeks out of the month and from approximately 10:00 a.m. until on or about 5:30 p.m., 6 days, one week out of the month (typically 37.5 to 45 hours per week).

150.    From approximately September 2020 until on or about May 18, 2020, twice a month, Plaintiff Reyes worked until approximately 9:00 p.m. (typically 41 to 48.5 hours per week).

151.    Throughout his employment, Defendants paid Plaintiff Reyes his wages by direct deposit.

152.    From approximately September 2020 until on or about May 18, 2021, Defendants paid Plaintiff Reyes $7.00 for each delivery he made which came out to approximately $346 per week.

153.    Defendants did not pay Plaintiff Reyes any wages for his last week of work.

154.    Plaintiff Reyes's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

155.    For example, Defendants required Plaintiff Reyes to work an additional 3 and a half hours past his scheduled departure time twice a month, and did not pay him for the additional time he worked.

156.    Defendants never granted Plaintiff Reyes any breaks or meal periods of any kind.

157.    Throughout his employment, Defendants withheld all of Plaintiff Reyes's tips

158.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Reyes regarding overtime and wages under the FLSA and NYLL.

159.    Defendants did not provide Plaintiff Reyes an accurate statement of wages, as required by NYLL 195(3).

160.    Defendants did not give any notice to Plaintiff Reyes, in English and in Spanish (Plaintiff Reyes's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

161.    Defendants required Plaintiff Reyes to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a camera, a vest, a bicycle battery, bicycle wheels, gloves, and boots.

*Plaintiff Oscar Gutierrez*

162.    Plaintiff Gutierrez was employed by Defendants from approximately May 2020 until on or about May 1, 2021.

163.    Defendants employed Plaintiff Gutierrez as a delivery worker.

164.    Plaintiff Gutierrez regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

165.    Plaintiff Gutierrez's work duties required neither discretion nor independent judgment.

166.    Throughout his employment with Defendants, Plaintiff Gutierrez regularly worked in excess of 40 hours per week.

167.    From approximately May 2020 until on or about May 2021, Plaintiff Gutierrez worked from approximately 9:00 a.m. until on or about 5:00 p.m. three days a week and from approximately 9:00 a.m. until on or about 5:30 p.m., two days a week (typically 41hours per week).

168.    Throughout his employment, Defendants paid Plaintiff Gutierrez his wages by direct deposit.

169.    From approximately May 2020 until May 1, 2021, Defendants paid Plaintiff Gutierrez $7.00 for each delivery he made which came out to approximately $840 per week.

170.     Plaintiff Gutierrez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

171.     For example, Defendants required Plaintiff Gutierrez to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

172.     Defendants never granted Plaintiff Gutierrez any breaks or meal periods of any kind.

173.     Throughout his employment, Defendants withheld all of Plaintiff Gutierrez's tips

174.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gutierrez regarding overtime and wages under the FLSA and NYLL.

175.     Defendants did not provide Plaintiff Gutierrez an accurate statement of wages, as required by NYLL 195(3).

176.     Defendants did not give any notice to Plaintiff Gutierrez, in English and in Spanish (Plaintiff Gutierrez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

177.     Defendants required Plaintiff Gutierrez to purchase "tools of the trade" with his own funds—including a bicycle, a chain, a helmet, and a delivery bag.

*Plaintiff Rafael Pascual Chacaj Batz*

178.     Plaintiff Chacaj was employed by Defendants from approximately November 2020 until on or about May 18, 2021.

179.     Defendants ostensibly employed Plaintiff Chacaj as a delivery worker.

180.     However, Plaintiff Chacaj was also required to spend a significant portion of his work day performing the non-tipped duties described above.

181.   Although Plaintiff Chacaj was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

182.   Plaintiff Chacaj regularly handled goods in interstate commerce, such as food court and other supplies produced outside the State of New York.

183.   Plaintiff Chacaj's work duties required neither discretion nor independent judgment.

184.   From approximately November 2020 until on or about May 18, 2021, Plaintiff Chacaj worked from approximately 9:00 a.m. until on or about 4:00 p.m., Mondays, Tuesdays, Wednesdays, Fridays and Sundays (typically 35 hours per week).

185.   Throughout his employment, Defendants paid Plaintiff Chacaj his wages by direct deposit.

186.   From approximately November 2020 until on or about May 18, 2021, Defendants paid Plaintiff Chacaj $7.00 for each delivery he made which came out to approximately $315 per week.

187.   Defendants never granted Plaintiff Chacaj any breaks or meal periods of any kind.

188.   Plaintiff Chacaj was never notified by Defendants that his tips were being included as an offset for wages.

189.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Chacaj's wages.

190.   Throughout his employment, Defendants withheld all of Plaintiff Chacaj's tips.

191.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Chacaj regarding overtime and wages under the FLSA and NYLL.

192.   Defendants did not provide Plaintiff Chacaj an accurate statement of wages, as required by NYLL 195(3).

193.     Defendants did not give any notice to Plaintiff Chacaj, in English and in Spanish (Plaintiff Chacaj's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

194.     Defendants required Plaintiff Chacaj to purchase "tools of the trade" with his own funds—including a bicycle and a bicycle battery.

*Defendants' General Employment Practices*

195.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

196.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

197.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

198.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

199.     Defendants required Plaintiffs Chacaj and Quiej and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

200.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

201.     These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general food court work with duties, including the non-tipped duties described above.

202.     These Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

203.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

204.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

205.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

206.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

207.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

208.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Castro worked.

209.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

210.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

211.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

212.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

213.    Defendants paid Plaintiffs a fixed rate for each delivery they made.

214.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

215.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

216.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

217.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

218.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

219.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

220.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

221.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

222.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

223.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

224.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

225.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

226.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

227.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

228.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

229.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

230.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

231.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

232.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

233.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

234.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

235.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

236.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

237.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

238.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

239.     Plaintiffs were damaged in an amount to be determined at trial.

<u>FOURTH CAUSE OF ACTION</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

240.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

241.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

242.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

243.     Plaintiffs were damaged in an amount to be determined at trial.

<u>FIFTH CAUSE OF ACTION</u>

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

244.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

245.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

246.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

247.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

248.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

249.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

250.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

251.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

252.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

253.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

254.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

255.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

256.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

257.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

258.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

259.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

260.     Defendants unlawfully misappropriated all of Plaintiffs' tips.

261.     Defendants knowingly and intentionally retained all of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

262.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

263.     Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

264.     Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)      Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as

to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)      All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

July 7, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

July 7, 2021

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Oscar Gutierrez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                               7 de julio de 2021

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 18, 2021

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Rafael Pascual  Chacaj  Batz

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         18 de mayo 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 18, 2021

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Olivio Reyes

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           18 de Mayo 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 18, 2021

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Miguel Alex  Quiej  Lopez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              18 de Mayo 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 18, 2021

BY ELECTRONIC SIGNATURE

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Luis Gordillo Jimenez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     18 de Mayo de 2021

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                   Telephone: (212) 317-1200
New York, New York 10165                                       Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 18, 2021

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Inocente Joj
Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     18 de mayo 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 21, 2021

**BY HAND**

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Armando Castro

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                            21 de mayo 2021

*Certified as a minority-owned business in the State of New York*